**FILED**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUN 22 2023

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES OF AMERICA :
:
: Case No: 23 CR 199-01 (BAH)
:
v. : 18 U.S.C. §§ 111(a)(1)
:
DILLON COLBY HERRINGTON :
:
Defendant. :
:

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, DILLON COLBY HERRINGTON, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### Statement of Facts

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however,

shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *HERRINGTON's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, DILLON COLBY HERRINGTON (hereinafter, "HERRINGTON") lives in Madison, Alabama. On the morning of January 6, 2021, he was present in Washington, D.C. and in attendance at the "Stop the Steal" rally on the Ellipse in the vicinity of the Washington Monument. After the rally, HERRINGTON walked with other rioters to the west side of the United States Capitol.

9. While on the West Plaza of the Capitol, HERRINGTON engaged in aggressively antagonistic and assaultive conduct toward Metropolitan Police Department (MPD) and United

States Capitol Police (USCP) officers who were attempting to contain and stop the forward progress of the crowd of rioters. His conduct included the following specific actions and statements:

   a. At approximately 2:15 p.m., HERRINGTON shouted at police officers who were trying to maintain a line, "This is what you fucking get!" At approximately 2:19 p.m., he shouted, "Fucking pussies!" and had to be restrained by other rioters.

   b. At approximately 2:20 p.m., HERRINGTON aggressively approached the police line again and said, "Look me in the fucking eyes, motherfucker. I'm coming for you."

   c. At approximately 2:21 p.m., HERRINGTON threw water from a water bottle at MPD Sgt. K.K, who was positioned on a raised platform with a waist-high wall around it (the "Platform").

   d. At approximately 2:23 p.m., HERRINGTON threw a plastic water bottle, and then a COVID mask, at Sgt. K.K., who was positioned on the Platform.

   e. At approx. 2:24 p.m., HERRINGTON threw a full water bottle in the direction of Sgt. K.K. and other police officers standing next to Sgt. K.K. on the Platform. The bottle struck the top of the wall around the Platform.

   f. About a half a minute later, HERRINGTON launched a 4 x 4 piece of lumber at an officer who was standing on the platform. As HERRINGTON was in the process of throwing the 4 x 4, the officer moved, and the 4 x 4 did not make contact with the officer.

   g. At approximately 4:25 p.m., HERRINGTON picked up a bike rack and began walking toward the officers on the Platform. It appears that HERRINGTON was

then sprayed with crowd-control spay and immediately threw the bike rack down. HERRINGTON then pulled an unidentified object out of a box marked "DANGER HIGH VOLTAGE" and threw it in the direction of the same officers.

   h. Later in the day, HERRINGTON ascended to the Upper West Terrace of the Capitol building. From the Upper NW Terrace balustrade, directly above the entrance to the Lower West Terrace tunnel, HERRINGON surveyed the violence taking place at the mouth of the tunnel. He appears to use his phone to capture some of this activity.

10. At approximately 4:57 p.m., MPD officers attempting to clear rioters from the Upper West Terrace noticed that HERRINGTON had a large military-style knife protruding from his rear pant pocket, removed the knife from HERRINGTON, and detained him. While he was detained, HERRINGTON informed the officers that he was also carrying a "taser." Officers recovered an object from HERRINGTON's pocket, that appears to have been a small stun gun.

11. HERRINGTON knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a). Specifically, defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of the officer's official duties, and with the intent to commit another felony. Specifically, he admits that he threw a 4 x 4 piece of lumber at a Metropolitan Police Department officer, who was assisting the USCP in protecting the United States Capitol building and grounds on January 6, 2021. He further admits that he knew at the time of the assault that the officer was engaged in the performance of his or her official duties; and that he assaulted on account of the officer's performance of his or her official duties. The defendant further admits that he assaulted the officer with the intent to commit another felony, that is, to obstruct, impede,

and interfere with law enforcement officers in the lawful performance of their official duties during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney for the
        District of Columbia

By: /s/ *David J. Perri*
    DAVID PERRI
    WV Bar No. 9219
    Assistant United States Attorney - Detailee
    U.S. Attorney's Office for the District of Columbia
    601 D Street, N.W.
    Washington, D.C. 20530
    Phone: (304) 234-0100
    Email: David.Perri@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer and have discussed it with my attorney, Heath Lynch, Esquire. I fully understand this factual proffer. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 06/22/2023

_____
Dillon Colby Herrington
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer and have reviewed it with my client fully. I concur in my client's desire to adopt this factual proffer as true and accurate. To my knowledge, my client's decision to agree to and adopt this factual proffer is an informed and voluntary one.

Date: 6/22/23

_____
Heath Lynch, Esquire
Counsel for the Defendant